J.V. PETERS & COMPANY,
INC., Plaintiff,

v.

HAZARDOUS WASTE FACILITY
APPROVAL BOARD, et al.,
Defendants.

No. C–2–82–1365.

United States District Court,
S.D. Ohio, E.D.

Nov. 15, 1984.

Brent L. English, Cleveland, Ohio, for plaintiff.

E. Dennis Muchnicki, Rita S. Eppler, Adam J. Wagenbach, Asst. Attys. Gen., Columbus, Ohio, for defendants.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter comes before the Court to consider the cross-motions for summary judgment of the plaintiff and the defendants. Included within the argument in support of its motion for summary judgment, the defendants contend that the Court should abstain from considering the merits of this action at this time. Upon its own motion and apart from the cross-motions for summary judgment which it will not consider herein, the Court concludes that defendants' contention as to abstention is well-taken. Accordingly, for the reasons that follow, the Court decides to abstain.

Plaintiff, J.V. Peters & Company, Inc., brought this action against the Ohio Hazardous Waste Facility Approval Board (the "Board"), its individual members and the former Attorney General of Ohio. Plaintiff alleges that Ohio Revised Code § 3734.-05(D), which governs the granting of operation permits for existing hazardous waste facilities, is unconstitutionally vague and operates to deny it due process of law. Plaintiff further alleges that the actions of defendant Board in connection with its application for a permit denied it due process and equal protection of the laws. Plaintiff seeks injunctive and declaratory relief as well as monetary damages for injury to its business.

Plaintiff is the successor corporation to a partnership that began business in June, 1980, managing a hazardous waste storage and treatment facility in Geauga County, Ohio. Plaintiff's facility included two large storage tanks and a mixer used to treat liquid wastes. At the time plaintiff's facility was established, plaintiff was required by then-existing Ohio Revised Code § 3734.02(E) to obtain a permit prior to installation and operation of its facility. In addition, several other permits were required under Ohio law. Plaintiff operated until May 29, 1981 without any of the required permits. On May 29, 1981, an order was entered against plaintiff in the Court of Common Pleas of Geauga County, temporarily restraining plaintiff from operating his facility without permits. On December 9, 1982, this order was made permanent.

On October 9, 1980, the Board was created and vested with authority to regulate operations and sitings of hazardous waste facilities. Plaintiff's facility was subject to this regulation, and plaintiff was required to obtain a permit from the Board. On March 16, 1981, plaintiff timely applied for a permit under the grandfather provision of Ohio Revised Code § 3734.05(D). In relevant part, this provides:

Upon receipt of a completed application, the board shall issue a hazardous waste facility installation and operation permit ... if the facility for which the permit is requested

(a) Was in operation immediately prior to the effective date of this revision;

(b) was in substantial compliance with applicable statutes and rules in effect immediately prior to the effective date of this division as determined by the director;

(c) demonstrates to the board that its operations after the effective date of this division will comply with applicable performance standards ...; and

(d) submits a completed application for a permit ... within six months after the effective date of this division. The board shall act on the application within twelve months after the effective date of this division.

Oh.Rev.Code § 3734.05(D)(1). Plaintiff's application was reviewed by the staffs of the Ohio Environmental Protection Agency and the Board. This review included in-

spections of plaintiff's facilities. On August 25, 1981, the Ohio Environmental Protection Agency recommended denial of the permit due to numerous violations found on the site. On September 14, 1981, the staff of the Board also recommended that the permit be denied. Both recommendations were based upon the conclusion that plaintiff was not in substantial compliance and was involved in litigation with the Ohio Attorney General at the request of the Ohio Environmental Protection Agency.

On September 15, 1981, the Board met to consider plaintiff's application for a permit, among other business. Plaintiff was represented by its President and counsel. Counsel was granted permission to address the Board and stated plaintiff's position. The Board voted unanimously, one member abstaining, to accept the staff recommendations and deny plaintiff a permit due to lack of substantial compliance. Plaintiff, through counsel, demanded that an adjudication hearing be held before October 9, 1981. Plaintiff contended before the Board that a hearing prior to October 9, 1981 was necessary to avoid violation of its due process rights.[1]

By a letter dated November 11, 1981, plaintiff was given official notice of the denial of the application for a permit and advised of its right to request an adjudication hearing. The notice detailed the grounds upon which plaintiff's application was denied. By a letter dated December 4, 1981, plaintiff requested a hearing upon certain issues, including whether it was in substantial compliance on October 9, 1980, whether it would be in substantial compliance after October 9, 1981, and other procedural matters. A hearing was set for January 28, 1982. The hearing has never been held due to a number of continuances. This lawsuit was filed on December 30, 1981.

### I.

■ Having considered the arguments of the parties, this Court is of the opinion that this is a case in which it has a duty to abstain under the doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In its classical formulation, *Burford*-type abstention is required when a federal court is presented with a case involving basic matters of state policy, complicated by nonlegal considerations of a local nature and where the state has specially concentrated all review of administrative orders in a single court. *See also Alabama Public Service Comm'n v. Southern Ry. Co.*, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951). Subsequent decisions of the Supreme Court sanction *Burford*-type abstention in cases where the state has a unified scheme for review of its administrative orders and federal intervention "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *see generally* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4244.

■ In *Forest Hills Utility Co. v. City of Heath, Ohio*, 539 F.2d 592 (6th Cir.1976), the Sixth Circuit upheld the decision of this Court to abstain from deciding constitutional claims arising out of a state condemnation proceeding in reliance upon *Burford v. Sun Oil Co., supra.* The Sixth Circuit, citing *Gay v. Board of Registration Commissioners*, 466 F.2d 879 (6th Cir. 1974) and *Muskegon Theatres v. City of Muskegon*, 507 F.2d 199 (6th Cir.1974), discussed the factors that are relevant to a decision to abstain. First, abstention may be proper where a premature constitutional decision might be avoided by a possible narrowing construction of the state law by a state court. *But see Colorado River Water Conservation District v. United States, supra,* 424 U.S. at 815 n. 21, 96

---

**1.** Ohio Revised Code § 3734.05(D)(2) provides, in part: "A hazardous waste facility that was in operation immediately prior to the effective date of this division may continue to operate after the effective date of this division if it ... obtains the permit under division (C) of this section within twelve months after the effective date of this division."

S.Ct. at 1245 n. 21. Second, abstention is also appropriate where it is necessary to avoid a needless conflict in the federal-state relationship. Third, federal courts should avoid making tentative decisions on issues of state law. And fourth, abstention is justified by the avoidance of unnecessary interference with state functions or regulatory schemes. *Id.* at 595. The Court also noted that abstention is particularly appropriate in cases involving disputes over land use. *Id.* at 595; *see also* Wright, Miller and Cooper, *supra,* § 4244.

First, it is undeniable that the instant case involves a challenge to a statutory scheme and the authority of a Board specially created to deal with a matter of substantial public importance. In *Clermont Environmental Reclamation Co. v. Wiederhold,* 2 Ohio St.3d 44, 442 N.E.2d 1278 (1982), the Ohio Supreme Court described the statutory scheme as follows:

> In response to a rapidly growing public health problem in Ohio, the General Assembly, in 1980, enacted a comprehensive measure, by way of Am.S.B. No. 269, to more effectively control the disposal of hazardous wastes, such wastes generally being the chemical by-products of the industrial and manufacturing process. With the aim and purpose of reasonably assuring that the facilities in the state where hazardous wastes would be disposed or would be designed, sited, and operated in such a manner so as to protect the public interest, the General Assembly amended R.C. Chapter 3734.
>
> By virtue of the enactment of R.C. 3734.05(D)(3), there was created a Hazardous Waste Facility Approval Board composed of the Director of Environmental Protection who serves as chairman, the Director of Natural Resources, the chairman of the Ohio Water Development Authority, one chemical engineer and one geologist. The board's main function is to review, and either approve or disapprove, applications for hazardous waste facility installations and operation permits.
>
> To reasonably assure that the newly formed board would site the hazardous waste facilities in the most feasible fashion based upon an input of wide consideration and criteria, the General Assembly, by way of R.C. 3734.05(C)(4)(c) and (d), provided that adjudicatory hearings must be conducted upon such applications for permits with the county commissioners and the chief executive officer of the municipal corporation in which the facility is proposed to be located, and any petitioning aggrieved or adversely affected persons being made parties to such proceeding.

*Id.* 2 Ohio St.3d at 45–6, 442 N.E.2d 1278. In addition, the power of the Board to regulate and approve hazardous waste facilities preempts the power of any political subdivision to impose any zoning or other requirement. Ohio Rev.Code § 3734.-05(D)(3).

It is apparent to the Court that the statutory scheme is designed to concentrate decision-making concerning hazardous waste facility siting in one proceeding. It is also apparent that the Board is to have authority to consider the many health and safety ramifications of hazardous waste facilities in determining whether to issue permits for such facilities. The granting or denying of permits is the Board's central function. The Act also balances the interests of the State against those of local governments: local government officials are to be parties to adjudicatory hearings under the Act, but independent local power is preempted. These substantial local interests caution against federal intervention in a case involving an operating permit.

Second, it is clear to this Court that entertaining the present case on its merits would tend to interfere with the review process created by state law and consequently with the formulation of uniform state policy. As noted above, chapter 3734 creates a special procedure for adjudication hearings in which the applicant, the staff of the Ohio Environmental Protection Agency, local officials and other aggrieved persons are made parties. *See* Ohio Rev. Code § 3734.05(C)(3). Review of decisions

of the Board is confined to one court, the Franklin County Court of Appeals. Ohio Rev.Code § 3734.05(C)(7). The fact that the state has created a special review process weighs heavily in favor of abstention. *See Burford v. Sun Oil Co., supra,* 319 U.S. at 325–330, 63 S.Ct. at 1103–1105. In the present case, plaintiff has by-passed the review process, in part, by filing the present action.

Third, if this Court were to consider the present case on its merits, it would inevitably be drawn into interpreting new and complex state law. Although plaintiff characterizes his claim as one to redress deprivation of constitutional rights, important questions of state law inevitably will arise. For instance, plaintiff contends that the failure of the Board to hold an adversary hearing prior to October 10, 1981 deprived it of procedural due process. This contention presupposes that plaintiff had a protected property interest in the conduct of its business. But, whether plaintiff has such an interest depends upon state law. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Thus, to determine whether plaintiff had a protected property interest, this Court would have to determine whether plaintiff was legally in operation prior to the actions of the Board. This Court has no special competence in interpreting state laws regulating the siting of hazardous waste facilities. In addition, due to the newness of the statute, there are few state court decisions to guide such an interpretation.

Fourth, this case involves, in substance, questions regarding land use. Questions of rights in land and land use have been considered especially appropriate for abstention. *Muskegon Theatres, Inc. v. City of Muskegon, supra; Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); *Martin v. Creasy,* 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959).

For these reasons, the Court concludes that exercise of its jurisdiction would unduly interfere with the formulation of a uniform state policy in an area that is traditionally the concern of the states, and therefore resolves to abstain from considering the merits of this action. Of course, by so doing, the Court expresses no view regarding the merits of this action.

II.

■ Normally, when *Burford*-type abstention is appropriate, the action is dismissed by the federal court. *Burford v. Sun Oil Co., supra,* 319 U.S. at 334, 63 S.Ct. at 1107. However, dismissal is not the invariable result. *See e.g., Kaiser Steel Corp. v. W.S. Ranch Co.,* 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968). The Sixth Circuit has stated that the "better practice" is for the district court to retain jurisdiction pending the final outcome of the state proceedings, particularly where the latter might not fully dispose of all the claims. *Forest Hills Utility Co. v. City of Heath, Ohio, supra,* at 596.

In the instant case, simple dismissal does not seem appropriate. Plaintiff has alleged several violations of constitutionally protected rights. Although the Court has not considered the merits of these constitutional claims, conceivably they are meritorious. It appears from the Prehearing Conference Report, filed with the Court as Plaintiff's Exhibit 22, that plaintiff might not be able to present his constitutional claims in an adjudication hearing before the Board. Moreover, Ohio Revised Code § 3734.-05(C)(7) provides that in an appeal from the Board

... the court is confined to the record as certified to it by the board. The Court may grant a request for the admission of additional evidence when satisfied that the additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the board.

Thus, it is possible that plaintiff's constitutional claims could not be presented to the state courts. Thus, this Court will retain jurisdiction solely for the purpose of providing a federal forum in the event that

plaintiff cannot present his constitutional claims in the state proceedings.

### III.

Plaintiff seeks not only injunctive and declaratory relief but also damages from defendants for economic losses and loss of goodwill. Ordinarily, actions for damages are not appropriate cases for abstention, for they tend not to interfere with the formulation of state policy to the extent that actions for equitable relief do. In the present case, however, plaintiff's claim for damages is intertwined with his claim for equitable relief, and would involve many of the same issues. Unlike the claim for damages in *Forest Hills Utility Co. v. City of Heath, Ohio, supra,* at 596, plaintiff's claim for damages cannot be said to be "separate" from his claim for injunctive relief. In consequence, this Court concludes that it would be improper to entertain plaintiff's damages claims.

**WHEREFORE,** upon consideration and being duly advised, this Court determines in its equitable discretion that it will **ABSTAIN** from considering the merits of this case and, therefore, orders that this case be **STAYED** while plaintiff presents his claims for administrative determination and judicial review in the state courts. The Court will, however, retain jurisdiction over this action pending final outcome of the state proceedings, for the purpose of providing a forum for plaintiff's constitutional claims in the event that these cannot be adequately presented in the state proceedings.

**IT IS SO ORDERED.**