Kenneth D. GINGERICH, et al., Plaintiffs,

v.

WHITE PIGEON COMMUNITY SCHOOLS, et al., Defendants and Third–Party Plaintiffs,

v.

MICHIGAN STATE BOARD OF EDUCATION, Third–Party Defendant.

No. K89–10134 CA.

United States District Court, W.D. Michigan, S.D.

April 13, 1990.

148

William A. Redmond, Deming, Hughey, Lewis, Keiser, Allen & Chapman, P.C., Kalamazoo, Mich., and David R. Melton, Rutherford Institute of Michigan, Grandville, Mich., for plaintiffs.

Lisa L. Swem, Michael A. Eschelbach, Thrun, Maatsch & Nordberg, P.C., Lansing, Mich., Gary R. Peterson, Oosterbaan, York, Cooper & Peterson, Kalamazoo, Mich., Paul J. Zimmer, Patricia T. Quinn, Asst. Attys. Gen., Frank J. Kelly, Atty. Gen., Gerald F. Young, and Jane D. Woodfin, Lansing, Mich., for defendants.

## OPINION

HILLMAN, Chief Judge.

### INTRODUCTION

This lawsuit challenges the implementation of the Michigan Model For Comprehensive School Health Education ("MMCSHE") at the White Pigeon schools. It is brought by students of White Pigeon Community Schools and their parents against White Pigeon Community Schools, its school board members and superintendent, the Calhoun Intermediate School District, and the superintendent of Public Instruction for the State Board of Education.

MMCSHE is a curriculum promulgated by the Michigan Department of Education and contains instruction on substance abuse prevention and mental and emotional health issues. Plaintiffs allege that the program involves "the practice of mental and emotional health medicine, affective education and quasi-psychotherapeutic methods". Complaint, ¶¶ 5.14–15. Plaintiffs contend that mandatory participation in the MMCSHE violates their civil rights protected under 42 U.S.C. § 1983 and their constitutional right to privacy.

Plaintiffs also challenge the MMCSHE on state law grounds. First, plaintiffs allege that the program was adopted in violation of the Open Meetings Act, [M.C.L.A. § 15.261 et seq.] M.S.A. §§ 4.1800(11) *et seq.* Plaintiffs further claim that the MMCSHE constitutes a substance abuse program under [M.C.L.A. § 333.6231(2) ] M.S.A. § 14.15(6231)(2) and therefore requires licensure under [M.C.L.A. § 333.6233(1) ] M.S.A. § 14.15(6233)(1). Finally, plaintiffs submit that the funding for the program violates [M.C.L.A. § 333.6231(3) ] M.S.A. § 14.15(6231)(3) since defendants have failed to obtain a license under [§ 333.6233(1) ] § 14.15(6233)(1).

In their Second Amended Complaint, plaintiffs allege three additional state claims. Count VI sets forth a common law malpractice claim on the grounds that the MMCSHE involves the "practice of psychology, psychiatry and psychoanalytic techniques by unlicensed and unqualified individuals." Second Amended Complaint, ¶¶ 11.2–11.3. Count VII contains allegations that defendants are engaging in illegal projective and nonprojective personality tests by implementing the MMCSHE. [M.C.L.A. § 380.1172] M.S.A. § 15.41172. Lastly, plaintiffs allege a violation of the students' right to "opt out" of sex education classes in Count VIII. [M.C.L.A. § 380.1507(4) ] M.S.A. § 15.41507(4). Plaintiffs seek declaratory, injunctive, and monetary relief on all counts.

This case was originally filed in the St. Joseph County Circuit Court on November 3, 1990. Defendants timely filed a petition for removal in the circuit court on December 7, 1989 on the grounds that this court has original jurisdiction over the federal questions presented in the complaint, 28 U.S.C. §§ 1331, 1343, and pendent jurisdiction over the related state claims. 28 U.S.C. § 1441(b)–(c); *United Mine Work-*

ers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Having removed the matter to federal court, defendants then filed a third-party complaint against the Michigan State Board of Education (the "State"). The State subsequently filed a motion to dismiss, claiming immunity under the Eleventh Amendment. Prior to the entry of this opinion and order, the parties filed a Stipulation to Dismiss the Third Party Complaint, which was accepted by this court. The State's motion is therefore dismissed as moot.

On December 31, 1990 a status conference was held before the Honorable Joseph G. Scoville, Magistrate of the United States District Court. Magistrate Scoville expressed concern over the appropriateness of this court's exercising pendent jurisdiction over the state claims and ordered the parties to brief the issue of remanding the state-law claims to state court for further proceedings. This order prompted plaintiff's motion to remand the state-law causes of action, which is presently before this court.

## DISCUSSION

A. *Remand of state claims:* Although the federal removal statutes authorize remand of removed actions in two instances, neither is applicable here. Where a "defect in the removal procedure" exists, the court shall remand the case under 28 U.S.C. § 1447(c). In the instant case, however, this court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331 and the case was properly removed. Plaintiff's state-law claims are also properly before this court under the doctrine of pendent jurisdiction, as they "derive from a common nucleus of operative fact" and a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138.

Remand pursuant to 28 U.S.C. § 1441(c) is available only if a "separate and independent claim or cause of action", otherwise non-removable, is removed by virtue of being joined with a removable claim. Section 1441(c) does not apply here, though, since plaintiffs' state claims "although independently non-removable, [are] pendent to, rather than separate and independent of the federal-law claim that had provided the basis for removal." *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988); *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 12–14, 71 S.Ct. 534, 539–40, 95 L.Ed. 702 (1951).

Although no statutory basis exists, remand of the state claims is nonetheless appropriate if this court determines that judicial economy, convenience, fairness, and comity will better be served by resolution in the state courts.

[A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate. The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.

*Cohill*, 484 U.S. at 357, 108 S.Ct. at 622.

Plaintiffs argue that this court should remand the state-law claims under *Cohill*, but retain jurisdiction over their federal claims. Defendants oppose the motion to remand, arguing that judicial economy and fairness dictate that all of the claims be resolved in a single forum. Alternatively, defendants submit that should the court remand the state-law claims, they will rescind their petition for removal.

■ While I am sympathetic to defendants' desire to litigate all of the claims arising out of the promulgation and implementation of MMCSHE together, the unusual character of this case compels me to conclude that remand of the state claims is appropriate.

Comity considerations strongly favor remanding the state-law claims. The claims here involve important public questions involving the propriety and legality of the adoption of the MMCSHE, and will likely present novel issues of state law. State courts are the final and best arbiters of

state law. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139; *Cohill*, 484 U.S. at 350, 108 S.Ct. at 618. A federal court should generally decline to exercise pendent jurisdiction where the state law issues are unique or unsettled.

> [T]he rationale of *Gibbs* centers upon considerations of comity and the desirability of having a reliable and final determination of the state claim by state courts having more familiarity with the controlling principles and the authority to render a final judgment.

*Hagans v. Lavine*, 415 U.S. 528, 548, 94 S.Ct. 1372, 1385, 39 L.Ed.2d 577 (1974). *See also Moor v. County of Alameda*, 411 U.S. 693, 716, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973) ("As is evident from this court's decision in *Gibbs* ... the unsettled nature of state law ... [was an] entirely appropriate factor for the District Court to consider."); *Jones v. Fitch*, 665 F.2d 586, 593 (5th Cir.1982) (district court's dismissal of state claims without prejudice because of "substantial novel questions of state law" affirmed.)

Fairness also dictates that the state-law claims be remanded. Substantial likelihood exists that this court will be unable to order complete relief should it exercise pendent jurisdiction over the state-law claims. Though the third-party complaint has been dismissed, plaintiffs have expressed their intention to seek injunctive relief against the State based on state-law claims. However, the Eleventh Amendment prohibits the federal courts from ordering state officials to conform their conduct to state law. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). State courts are not similarly barred.

■ Arguably the principles of judicial economy and convenience are better served by trying all of the claims together in a single forum. Certainly duplicative litigation is undesirable. Where novel issues of state law are presented, though, considerations of judicial economy are not determinative. "[A] federal court should be reluctant to retain pendent jurisdiction over a question for which state jurisprudence gives inadequate guidance." *Financial General Bankshares, Inc. v. Metzger*, 680 F.2d 768, 776 (D.C.Cir.1982) (holding that the district court erred in retaining jurisdiction over pendent state law claims raising novel issues of state law on the basis of judicial economy). *See also Zahnow v. Great Lakes Distributing Co.*, 544 F.Supp. 553, 559 (E.D.Mich.1982) (remanding state claims despite imminent trial date and completion of discovery since resolution of claim dependent on interpretation of unsettled matter of state law).

■ Pendent jurisdiction is discretionary, and should not be exercised where not justified by considerations of economy, convenience, fairness, and comity. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139; *Cohill*, 484 U.S. at 348–50, 108 S.Ct. at 617–19. After carefully balancing these factors, I conclude that it would be imprudent for this court to exercise pendent jurisdiction over the state claims in this matter. Consequently, the claims based upon state law will be remanded to the state courts for resolution.

Having decided that remand of the state claims is appropriate, I must now address the question of which counts present a state claim. The parties agree that Counts I, IV, VI, VII, and VIII allege a cause of action under state law. However, contrary to plaintiffs' assertion, defendants argue that this court has subject matter jurisdiction over Count V, alleging illegal expenditure of funds.

■ Defendants mistakenly assume that the receipt and use of federal funds is sufficient to confer federal jurisdiction. To invoke federal question jurisdiction, the claim must "arise under" federal law. 28 U.S.C. § 1331. Count V states a cause of action premised upon state law: illegal expenditure of state and federal funds in violation of [M.C.L.A. § 333.6231(3)] M.S.A. § 14.15(6231)(3). Second Amended Complaint, ¶ 10.2. A state-created claim can only be said to "arise under" federal law if the dispute turns upon the "validity, construction, or effect of federal law" where the federal question is a real and substantial issue whose resolution is an

essential element of the case. *City Nat. Bank v. Edmisten*, 681 F.2d 942, 945 (4th Cir.1982); *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936).

■ Defendants' right to receipt of federal funds is not at issue; only the propriety of the disbursement of those and other funds is disputed. Regardless of the outcome of this lawsuit, defendants receipt of federal funds is unaffected. No "real and substantial issue" of federal law exists here, and therefore Count V will be remanded together with the other state-law claims.

B. *Remand of federal claims:* Defendants propose to rescind or withdraw their petition for removal in light of the court's decision to remand the state claims. Defendants do not challenge this court's jurisdiction over the federal claims. Indeed, the jurisdictional basis is squarely founded upon 28 U.S.C. § 1331, as asserted in their petition for removal. Rather defendants are merely requesting that this court relinquish its jurisdiction, after having been properly invoked by the defendants themselves, so that a single tribunal will decide both the state and federal issues.

■ Defendants may challenge a federal court's jurisdiction even though they removed the case to federal court in the first place. *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951); *Hudson v. Smith*, 618 F.2d 642 (10th Cir.1980); *Basso v. Utah Power and Light Company*, 495 F.2d 906 (10th Cir. 1974). To rule otherwise would impermissibly allow litigants to expand federal jurisdiction by consent. *Finn*, 341 U.S. at 17–18, 71 S.Ct. at 541–42; *Industrial Addition Assn. v. Commissioner*, 323 U.S. 310, 313, 65 S.Ct. 289, 291, 89 L.Ed. 260 (1945). However, since the remaining claims are properly before this court on federal question jurisdiction, defendants are estopped from protesting the exercise of that jurisdiction. Reviewing a line of cases upholding judgments by district courts where removal was improper for nonjurisdictional reasons, the Supreme Court in *Finn* stated:

[T]he federal trial court would have had original jurisdiction of the controversy had it been brought in the federal court in the posture it had at the time of the actual trial of the cause or of the entry of the judgment ... The defendant who had removed the action was held to be estopped from protesting that there was no right to removal. Since the federal court could have had jurisdiction originally, the estoppel did not endow it with a jurisdiction it could not possess.

341 U.S. at 16–17, 71 S.Ct. at 541–42.

Defendants do not even assert that the removal was in any way improper. The possibility that this court would remand the state claims, either upon plaintiffs' request or *sua sponte*, was by no means unforeseeable at the time of defendants' petition for removal. Since this court has jurisdiction, and noting that removal was indeed proper, defendants are now estopped from rescinding their petition for removal.

C. *Abstention:* Even though, as I have stated, this court has jurisdiction over the remaining federal claims, I nonetheless find it improper to decide these issues at the present time. In limited situations a federal court may abstain from deciding a claim that is properly before it. Although none of the parties have urged this, a court may decide to abstain upon its own motion. *Bellotti v. Baird*, 428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976); *Muskegon Theatres, Inc. v. City of Muskegon*, 507 F.2d 199, 201 (6th Cir.1974); *AFA Distributing Co. Inc. v. Pearl Brewing Co.*, 470 F.2d 1210, 1213 (4th Cir.1973).

This court does not lightly refuse to exercise jurisdiction when properly invoked. The abstention doctrines are to be used sparingly, and are the "exception" rather than the "rule." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 14, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983); *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). However, it is reversible error for a district court to decide a case which falls within one or more of the established abstention doctrines. *Kaiser Steel Corp. v.*

*W.S. Ranch Co.,* 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968); *Fields v. Rockdale County, Georgia,* 785 F.2d 1558 (11th Cir.1986). Therefore, as I am satisfied that this case falls squarely within one, if not two of the abstention doctrines, I must refrain from deciding the matter until the state courts have resolved the related issues.

■ Where resolution of a federal constitutional question depends in part on the outcome of an unsettled issue of state law, a district court may stay its consideration of the case until the state courts have ruled upon the matter. *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). As the Supreme Court described in *Colorado River,* "Abstention is appropriate 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.'" 424 U.S. at 814, 96 S.Ct. at 1244 *quoting County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959).

Plaintiffs' federal claims are premised upon the right of privacy and the privileges and immunities guaranteed in the Constitution, the Bill of Rights, and the Fourteenth Amendment. These claims depend upon and necessarily require resolution of novel issues of state law. Determining whether implementation of the MMCSHE infringes upon plaintiffs' constitutional rights involves interpretation of the MMCSHE itself and application of state law to it.

The state courts have not yet had the opportunity to consider most of the issues presented by plaintiffs, and thus no precedent exists upon which this court could rely in assessing plaintiffs' constitutional claims. In these circumstances, abstention is appropriate.

Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication.

*Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 1181, 14 L.Ed.2d 50 (1965). *See also Lake Carriers' Assn. v. MacMullan,* 406 U.S. 498, 511, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972). In order to avoid such unnecessary decisions on the constitutional questions raised by plaintiffs, under the *Pullman* doctrine I must abstain from hearing the case until the state courts have had an opportunity to review the MMCSHE and application of the state licensure laws and regulations to it.

Furthermore, this case fits equally well under the *Burford* abstention doctrine. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). As the Supreme Court recently explained:

Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.... [T]he state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244. *See also New Orleans Public Serv. v. Council of New Orleans,* —— U.S. ——, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989).

This case presents exactly the situation addressed under *Burford.* The MMCSHE is a comprehensive curriculum promulgated by a state agency. Its implementation raises substantial and highly controversial issues of public policy and state law. Because of the likelihood that its implementation in other school districts will result in lawsuits similar to the one at bar, a coherent and consistent application of state law is desirable. Resolution of the federal issues currently before this court necessarily involves interpreting state law. While federal courts are frequently charged with the

task of interpreting and applying state law, normally prior state court decisions provide sufficient guidance. Here, however, due to the newness of the MMCSHE, no precedent exists on these issues. This court at best could only strive to predict the actions of the state courts.

It would be improvident for this court to attempt to forecast how the state courts rule.

> Abstention in favor of state court adjudication is sound judicial administration where, as here, it can increase the assurance that all those affected by the statute in question, including the parties to this action, will be given the benefit of an authoritative and uniform rule of law applied alike to all businesses and grievants.

*Naylor v. Case and McGrath, Inc.*, 585 F.2d 557, 558 (2nd Cir.1978). Resolution of these difficult questions of state law will be forthcoming from the state courts. Because I have declined to exercise pendent jurisdiction over the related state claims for similar reasons, the plaintiffs must pursue their state claims in the St. Joseph County Circuit Court. Consideration of the federal questions subsequent to the Circuit Court's determination of the state claims avoids the risk of inconsistent results with later state court adjudications.

 Plaintiffs request not only equitable relief, but also seek damages. Actions for injunctive and declaratory relief substantially interfere with the formulation of state policy and are therefore subject to the abstention doctrines. Because actions for damages do not similarly interfere with state policy, abstention is not usually appropriate. Where, however, as here, the claim for damages is "intertwined" with the claim for equitable relief, and involves determination of the same issues, abstention is appropriate. *J.V. Peters & Co. v. Hazardous Waste Fac. App. Bd.*, 596 F.Supp. 1556, 1560–61 (S.D.Ohio, 1984). I must therefore refrain from hearing plaintiffs' claim for damages as well as the prayer for equitable relief at this time.

Generally, when a district court abstains under the *Burford* doctrine, dismissal is

appropriate. *Burford*, 319 U.S. at 334, 63 S.Ct. at 1107. The same is also true where abstention is justified under both *Pullman* and *Burford*. *Martin v. Creasy*, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959); *Educational Services Inc. v. Maryland State Bd. for Higher Educ.*, 710 F.2d 170, 172 (4th Cir.1983). However, dismissal is not the only option available. *Kaiser Steel Corp., supra; Williams v. Redbank Bd. of Ed.*, 662 F.2d 1008 (3rd Cir.1981). Two circuits have even found that courts abstaining under *Burford* in a removal case may remand rather than dismiss the matter. *See Corcoran v. Ardra Ins. Co., Ltd.*, 842 F.2d 31, 36 (2nd Cir.1988); *Grimes v. Crown Life Ins. Co.*, 857 F.2d 699, 707 n. 11 (10th Cir.1988). While this would provide an avenue to accommodate defendants' proposal to remand the federal along with the state claims, the law of this circuit does not permit me to oblige.

The Sixth Circuit has stated that a district court abstaining from hearing a case should retain jurisdiction rather than dismiss the suit.

> [T]he "better practice" ... would have been for the district court to have retained jurisdiction pending the final outcome of the state proceedings, especially where, as here, they may not fully dispose of all of the claims.

*Forest Hills Utility Co. v. City of Heath, Ohio*, 539 F.2d 592, 596 (6th Cir.1976), *citing Muskegon Theatres, Inc. v. City of Muskegon*, 507 F.2d 199, 205 (6th Cir.1974). Therefore, assuming plaintiffs properly preserve their federal claims, this court will entertain those matters following the state court's disposition of the state claims.

## CONCLUSION

In sum, the parties' stipulation to dismiss the third party complaint render the States motion to dismiss moot. It will accordingly be dismissed. Because of the novel and important issues of state law presented here, I find it appropriate to decline the exercise of pendent jurisdiction over the state-law claims and will therefore remand those matters for resolution in state court. Finally, as to the remaining two federal

154

claims, under the *Pullman* and *Burford* abstention doctrines, I abstain from hearing those claims until the state courts have ruled upon the unsettled areas of state law involved.